<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HOSSAM KASSEM, :<br>:<br>: **Civil Action No. 12-06132 (SRC)**<br>Plaintiff, :<br>v. :<br>: **OPINION**<br>WALGREENS CORPORATE and KAM :<br>SOLIMAN, :<br>:<br>Defendants. :<br>: | |

<u>**CHESLER**</u>, District Judge

  This matter is before the Court on the motion for summary judgment filed by Defendants Walgreens Eastern Co., Inc. and Kam Soliman ("Walgreens" and "Soliman" and, collectively, "Defendants"). [Docket Entry 35.] Plaintiff *pro se* Hassem Kossam ("Plaintiff") has opposed. [Docket Entries 41, 42, 52.] In his Complaint, Kassem seeks compensatory and injunctive relief for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), and the Age Discrimination and Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623(a). Pursuant to Federal Rule of Civil Procedure 78, the Court will rule on the papers submitted, and without oral argument. For the reasons that follow, Defendants' motion will be granted.

**<u>BACKGROUND</u>**

  This lawsuit stems from the July 19, 2011 termination of Plaintiff's employment as a store clerk at a Walgreens store in Carlstadt, New Jersey. Based upon the evidence submitted in connection with this motion, the material facts of this case are straightforward and largely

undisputed. Briefly, they are as follows:

Plaintiff is a native of Egypt who trained as a civil engineer before moving to the United States in 1986. He was hired by Walgreens as an overnight store clerk ("OSC") in August 2009. OSCs are responsible for, among other things, organizing shelves, manning the cash registers, and interacting with customers. During the time period relevant to this lawsuit, Plaintiff also owned and worked at a pizza shop in East Rutherford, New Jersey. Plaintiff would work at the pizza shop until 11:00 PM nightly before beginning his overnight shift at Walgreens. Defendant Soliman started as the store manager at the Carlstadt location in September of 2009, and served as Plaintiff's supervisor until his eventual termination.

Plaintiff initially worked five nights a week. (Kassem Dep. 67:13-16.) In late 2009 or early 2010, Plaintiff lost a shift, or had a shift taken from him by Soliman. This reduced his total hours worked weekly to thirty, down from forty. (Id. at 23:22-24.) According to Soliman, Plaintiff's hours, along with the hours of many employees at the Carlstadt store, were reduced because of budget cutbacks. (Soliman Aff. ¶ 2.) As shifts became available over the course of Plaintiff's employment, however, Soliman chose not to increase Plaintiff's hours because (1) Plaintiff was incapable of performing certain job-related tasks – like photo processing – that other OSCs were capable of performing,[1] and (2) Plaintiff's performance-related issues "made it difficult for [her] to schedule Plaintiff for more hours over other employees who did not have such issues." (Id. at ¶ 3.)

Those performance-related issues are well documented. Indeed, in connection with their motion Defendants have submitted numerous written disciplinary warnings, dating as far back as

---

[1] Plaintiff's deposition testimony confirms that he never completed the training necessary to become proficient at photo processing, despite Soliman's initial suggestion to train him. (Kassem Dep. 47:14-21.)

2

March 2010, describing the reprimands Plaintiff received for tardiness, leaving the register unattended, and "yelling" while on the sales floor, among other things.  (See Kessel Decl., Exs. G, H, I, J, K, M, N.)  Moreover, three of Plaintiffs coworkers – Rodney Hannah ("Hannah") and Karen Herritt ("Herritt"), service clerks, and Kathi Blaylock ("Blaylock"), an assistant manager – all testified at deposition that Plaintiff often inappropriately flirted with female customers, and disrupted customer service by doing so.  (See, e.g., Herritt Dep. 9:9 to 10:1 ("a lot of the customers would not come in when you were on your shift because a lot of times with the women you were – you were, 'You beautiful, you beautiful, you' . . . and . . . they had said that they . . . will not come in during your shift because they felt that you were being inappropriate"))

On June 6, 2011, Plaintiff received a "final" disciplinary warning, which describes Plaintiff's refusal to sign certain paperwork because if he signed "the paper work then Mrs. Soliman would know" that he did not complete an assigned task.  (Kessel Decl., Ex. N.)  This disciplinary warning states that Plaintiff's job performance was "substandard," that Plaintiff was prone to "talk[ing] back" and was negative in the workplace, and that any further performance issue or incident of inappropriate behavior would lead to Plaintiff's termination.  (See id.)  Sure enough, Plaintiff was terminated on July 19, 2011, after he refused to serve a customer at the register and failed to re-stock a basket of items returned by customers.  (Kessel Decl., Ex. C; Kassem Dep. 115:2-16.)[2]

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and after dismissal of the Charge, a Complaint in this Court.  The Complaint

---

[2] Defendants state that Plaintiff was hiding the basket of returned goods "so that management would not see that he had not put them away."  (See Defs.' L.Civ.R. 56.1 Statement, ¶ 33.)  Plaintiff, on the other hand, testified at deposition that he was leaving the basket of goods for the next shift to re-stock, and that "everyone," presumably, other OSCs, "does this."  (Kassem Dep., 115:2-16.)  Regardless of motivation, it is undisputed that OSCs are responsible for re-stocking items after customers return them.  (Id. at 115:19-23.)

alleges that Plaintiff was discriminated against over a nineteen-month period of "ongoing unfair treatment, manipulation of the employer's self-policy, and ending with an alleged wrongful termination was initiated at the hand of the Stone Manager [entire excerpt sic'd] . . . ."  (See Compl., at 1.)  The Complaint alleges violations of both Title VII and the ADEA.

## SUMMARY JUDGMENT STANDARD

Summary judgment under Federal Rule of Civil Procedure 56(a) is appropriate when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino, 358 F.3d at 247 (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district

court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## DISCUSSION

### A.     Employment Discrimination Under Title VII and the ADEA

"[B]arring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to

5

certain positions." Ezold v. Wolf, Block, Schorr and Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992). In other words, a court does not sit as arbiter of particular employment decisions, but instead determines whether such decisions were animated by an illegal discriminatory purpose. See id.; Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997). As the Court understands the Complaint, Plaintiff contends that both the reduction in his hours and his eventual termination were illegally motivated by his race and age, in violation of Title VII and the ADEA.

Because Plaintiff has not proffered direct evidence of discrimination, his claims are governed by the Supreme Court's McDonnell Douglas burden shifting analysis. Burton v. Teleflex, Inc., 707 F.3d 417, 425-26 (3d Cir. 2013) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)). Under this well-worn standard, the plaintiff must first establish, "by a preponderance of the evidence," a *prima facie* employment discrimination case. Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). A *prima facie* case under Title VII requires a showing that "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action . . . ." See id. (citing McDonnell Douglas, 411 U.S. at 802). A *prima facie* ADEA case, on the other hand, requires a plaintiff to show that (1) "she is forty years of age or older"; (2) "the defendant took an adverse employment action against her"; (3) "she was qualified for the position in question"; and (4) "she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." Teleflex, 707 F.3d at 426.

Once a *prima facie* case is made out, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Sarullo, 352 F.3d at 797 (quoting McDonnell Douglas, 411 U.S. at 802). Assuming the employer successfully does so, "the presumption of discriminatory action raised by the *prima facie* case is rebutted," and the plaintiff "must then establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." See id. (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 255 (1981)). This is a burden of production which the plaintiff must satisfy to surmount summary judgment. See Teleflex, 707 F.3d at 426-27.

### B. The Claims Against Soliman

The Court can dispose of the claims against Soliman in short order. As Defendants correctly highlight (Mov. Br. at 13-14), "Congress did not intend to hold individual employees liable under Title VII." Le v. Univ. of Pa., 321 F.3d 403, 408 n.3 (3d Cir. 2003) (quoting Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc)). The same rule governs ADEA claims. See Parikh v. UPS, 491 F. App'x 303, 308 (3d Cir. 2012) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 246 n.29 (3d Cir. 2006)). Thus, absent facts that indicate Soliman was Plaintiff's employer, as opposed to merely his supervisor, Soliman is immune from Title VII and ADEA liability. No such facts exist here – indeed, Plaintiff repeatedly refers to Soliman as the "Store Manager" in his opposition papers – and judgment as a matter of law will be entered in favor of Soliman on all claims.

### C. The Claims Against Walgreens

Summary judgment is also appropriate for the Title VII and ADEA claims brought

against Walgreens.  Even assuming without deciding that there is sufficient evidence in the record to make out a *prima facie* case of age or race discrimination, Plaintiff has failed to proffer any evidence that indicates Walgreens' articulated reasons for Plaintiff's reduction in hours and eventual termination were pretext for illegal discrimination.  Without any such evidence, Plaintiff's lawsuit must fail.  Teleflex, 703 F.3d at 426-27.[3]

Walgreens' proffered reasons for the adverse employment actions complained of here are undoubtedly legitimate and non-discriminatory.  Walgreens submits evidence that indicates Plaintiff's hours were reduced based upon a combination of budget cutbacks and Plaintiff's inability to complete assigned tasks or perform certain tasks that other employees were capable of doing.  Moreover, Walgreens contends that Plaintiff was fired for, among other reasons, a history of tardiness, incidents with customers, and consistently poor job performance.  These proffered reasons are sufficient to satisfy this aspect of McDonnell Douglas, a burden on the defendant that the Third Circuit characterizes as "relatively light."  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

As such, Plaintiff's Title VII and ADEA claims could only proceed past summary judgment on a showing of evidence tending to indicate that Walgreen's proffered non-discriminatory reasons are in fact pretext for invidious age or race discrimination.  As the Third Circuit has recently articulated,

> [a] plaintiff may demonstrate pretext at summary judgment in two different ways.  First, the plaintiff may point to evidence in the record that would cause a reasonable juror to disbelieve the employer's articulated legitimate non-discriminatory reason, thereby creating a genuine dispute of material fact as to the

---

[3] Because the Court finds that Plaintiff cannot carry his burden under McDonald Douglas, the Court need not address Defendants' alternative arguments that the claims based upon the reduction in Plaintiff's hours fail as of law because those claims are time barred and Plaintiff failed to exhaust his administrative remedies.  (See Mov. Br. at 10.)

> credibility of that reason. . . .  If a plaintiff comes forward with evidence that would cause a reasonable factfinder to find the defendant's proffered reason unworthy of credence, she need not adduce any evidence of discrimination beyond her prima facie case to survive summary judgment. . . .  Second, the plaintiff may also defeat summary judgment by pointing to evidence that indicates that the employer acted with discriminatory animus.

Teleflex, 707 F.3d at 430-31 (internal quotations and marks omitted).  In other words, without a demonstration that evidence in the record "cast[s] doubt on an employer's articulated reasons for an employment decision," Fuentes, 32 F.3d at 765 (quoting Ezold, 983 F.3d at 527)), summary judgment against the employee is warranted.

Plaintiff has failed to come forward with or point to that evidence, and an independent review of the summary judgment record fails to overturn any such evidence either.  Plaintiff certainly voices his displeasure with the evidence submitted by Defendants in support of their motion, the majority of which indicates that Plaintiff was frequently disciplined for inappropriate workplace behavior and failure to complete assigned tasks; at one point, Plaintiff even states that the deposition testimony of Hannah, Blaylick, and Herritt – in which all three Walgreens employees testified that Plaintiff inappropriately flirted with female customers while at work – is a "total fabrication."  (Plf.'s L.Civ.R. 56.1 Statement, at 6.)  As Defendants correctly highlight, however, Plaintiff points to no deposition testimony or documentary evidence to dispute this testimony and all other entirely consistent record evidence; Plaintiff's entire opposition instead presents nothing but "speculation and conjecture" insufficient to create the fact disputes necessary to surmount summary judgment.  See S. Camden Citizens in Action v. New Jersey Dep't of Envtl. Prot., No. 01-cv-702 (FLW), 2006 WL 1097498, at *21 (D.N.J. Mar. 31, 2006) (citing Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990)); see also

Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) ("a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue" (quoting Celetox, 477 U.S. at 325)).

Plaintiff actually admits as much, testifying at his deposition that this lawsuit is predicated on nothing more than his belief that Walgreens discriminated against him [entire excerpt sic'd] –

> In regard of my national origin, I don't have any other evidence . . . . I believe that maybe could be taken of the allegation because I feel . . . it's true and it's a fact that I was discriminated. But as far as my original discrimination over where I'm from, my race, I couldn't predict evidence. That doesn't mean there is no discrimination. And evidence is one thing and discrimination another thing.

(See Plf. Dep. at 239:7-20.) But Plaintiff has it exactly backwards – at summary judgment evidence tending to indicate discrimination is the only thing. Ullrich v. U.S. Sec'y of Veterans Affairs, 457 F. App'x 132, 136 (3d Cir. 2012) ("A plaintiff's mere belief or contention that he was subject to discrimination is not enough to create a dispute of material fact sufficient to survive summary judgment." (citing Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 333 (3d Cir. 2005))). That is especially so in this case, where the undisputed record reveals that Plaintiff was frequently tardy, performed his job poorly, and was sexually inappropriate with female customers.

The Court will not belabor the point. Despite Plaintiff's sincerely held belief that he was discriminated against because of his age and Egyptian heritage, the summary judgment record does not contain facts which would cause a reasonable factfinder to question Walgreens' proffered reasons for Plaintiff's reduction in hours and termination. See Teleflex, 707 F.3d at

10

430.  Nor has Plaintiff presented evidence to indicate Walgreens acted with a discriminatory animus towards him during his employment, or at its end.  See id. at 430-31.  Plaintiff's opposition papers, while lengthy, consist of nothing more than legal argument, speculation, and statements regarding Plaintiff's belief about what happened.  (See, e.g., Kassem Aff. ¶ 11 ("I testify that my claim against Ms. Soliman for age discrimination is to be accurate and true, regardless on whether I would be capable to prove the allegations under the legal standards [entirety sic'd].").)  In such a circumstance, judgment as a matter of law in favor of Walgreens is appropriate.  Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) ("summary judgment is essentially 'put up or shut up' time for the non-moving party," who must "rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument").

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.  An appropriate form of Order accompanies this Opinion.


    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: July 10th, 2014